760 P.2d 1085

**Stephen J. LOVE, a single man, Plaintiff/Appellant,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY, Defendant/Appellee.**

No. 2 CA–CV 87–0223.

Court of Appeals of Arizona, Division 2, Department B.

Feb. 23, 1988.

Reconsideration Denied April 25, 1988.

Review Denied Sept. 21, 1988.

Paul G. Rees, Jr., Tucson, for plaintiff/appellant.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Scott E. Boehm and David M. Bell, Phoenix, for defendant/appellee.

**OPINION**

ROLL, Judge.

Plaintiff/appellant Stephen J. Love (Love) appeals from a judgment notwithstanding the verdict entered in favor of defendant/appellee, Liberty Mutual Insurance Company (Liberty Mutual). For the reasons set forth below, we vacate and remand.

**FACTS**

This action arises from a traffic accident involving a motor vehicle and a pedestrian. On September 30, 1977, Tena Bloom (Bloom) worked as a cocktail waitress at the Stag & Hound Restaurant in Yuma, Arizona. She arrived at work that day at approximately 4:30 p.m. and finished her shift between 10:00 and 10:30 p.m. Steve Keller was the assistant manager, and she notified Keller both upon commencement and completion of her shift.

That evening, a band was playing at the restaurant. The band was used as advertising to draw people into the restaurant. Members of the band were staying at Keller's residence. In addition, Keller permitted the band to use his personal vehicle. Keller placed no restrictions on the use of the vehicle by the band members.

After Bloom completed her shift, one of the band members asked her if she would go to Keller's house to pick up a part for a microphone which the members needed for their performance. At a 1981 deposition, Bloom stated that the musicians needed the microphone part to finish their performance that evening:

Q. Did you know that [the musicians] had been having trouble with the sound system?

A. [by Bloom] They must have been having, you know, trouble with the sound system when I was doing my check out, because when I came back they couldn't play anymore or their speaker was fuzzy, or something like that.

Q. That was the reason they needed this part?

A. Right. In order to finish out their night. And they had to go until 1:00.

Q. The place didn't close until 1:00 a.m.?

A. Right.

Q. So that there was a degree of necessity from the Stag and Hound point of view, if they wanted to have a band playing that Friday night, they had to have this part at Keller's house; correct?

A. Yes. I guess so.

In 1986, Bloom again testified regarding the need for the microphone part:

Q. Did [the musicians] tell you that they were having trouble with the sound system and that's why they needed this microphone part?

A. [by Bloom] Yes.

Q. And you knew that it was before 11:00 and they still had more than two hours to play?

A. Yes.

At trial, Bloom testified that she did not know whether Keller had told the band that Bloom might get the microphone part for them. She was impeached with a quote from her 1981 deposition:

Q [BY COUNSEL FOR LOVE] And in '81 you said, quote, Steve Keller had told them that I was off duty and that I might go for them if they asked me, unquote. You did say that back in '81, didn't you?

A [BY BLOOM] Okay. I don't know if Steve Keller told them I was off duty. I assume that he told them that I was off duty. That is all—you know, I just assumed that he told them that I was off duty.

Bloom travelled in Keller's vehicle directly to Keller's house, picked up the microphone, and was returning to the restaurant when she struck pedestrian Stephen J. Love. Love was severely injured.

## PROCEDURAL HISTORY

Love sued Bloom for the injuries he received when struck by Bloom when Bloom was operating Keller's vehicle. He received a judgment of $227,286.00. There were no other parties to the action.

Thereafter, Love filed a complaint for declaratory judgment against Liberty Mutual, seeking a determination that Bloom's driving was covered by the insurance carrier for Stag & Hound. The matter was tried to a jury, and the jury returned a verdict that "at the time of the accident of September 30, 1977, Tena Bloom was using an automobile within the scope of her employment for the business of Stag &

Hound." The trial court granted Liberty Mutual's motion for judgment notwithstanding the verdict, stating:

[T]here was insubstantial evidence, as a matter of law, to support a finding that, at the time of the accident of September 30, 1977, Tena Bloom was using an automobile within the scope of her employment and for the buseiness [sic] of Stagg [sic] & Hound, the insured of the Defendant ...

## ISSUE ON APPEAL

The sole issue on appeal is whether the trial court properly granted Liberty Mutual's motion for judgment notwithstanding the verdict based on its conclusion that Bloom was not acting within the scope of her employment at the time of the accident.

## BLOOM WAS ACTING WITHIN THE SCOPE OF HER EMPLOYMENT

The insurance policy, insofar as it pertains to this case, affords coverage as follows:

Each of the following is an insured under this policy to the extent set forth below:

a. The named insured and executive officer, director, stockholder, or employee or real estate manager thereof while acting within the scope of his duties as such; but with respect to non-owned automobiles, only while such automobile is being used in the business of the named insured.

In order for Liberty Mutual to be liable under the policy, a two-prong test must be met: (1) Bloom was acting within the scope of her employment at the time of the accident, and (2) Keller's vehicle was being used for the business of the insured.

The conduct of a servant is within the scope of employment if it is of the kind the employee is employed to perform, it occurs substantially within the authorized time and space limit, and it is actuated at least in part by a purpose to serve the master. *Transamerica Insurance Co. v. Valley National Bank,* 11 Ariz.App. 121, 125, 462 P.2d 814, 818 (1969); Restatement (Second) of Agency § 228 (1958). Liberty

Mutual argues that because Bloom was employed only as a cocktail waitress and since she had finished her work for the evening when asked to retrieve the microphone part, the errand was clearly outside the scope of her employment.

However, under the special errand rule, an employer remains vicariously liable for the conduct of an employee engaged in a special errand for the employer, even though the errand may be different from the type of work usually performed for the employer. *Ducey v. Argo Sales Co.,* 25 Cal.3d 707, 716, 159 Cal.Rptr. 835, 844, 602 P.2d 755, 764 (1979); *cf. Scottsdale Jaycees v. Superior Court of Maricopa County,* 17 Ariz.App. 571, 575, 499 P.2d 185, 189 (App.1972). Even though Bloom's primary resonsibility for the restaurant was to serve drinks, this necessarily entailed performance of many incidental tasks. We are reluctant to conclude that a restaurant employee who, upon request of musicians performing at a restaurant, attempts to retrieve a microphone piece needed by musicians so that they can perform for the benefit of that restaurant thereby acts outside the scope of her employment because the task was not enumerated in her job description.

A special errand can be dual in purpose. *Trejo v. Maciel,* 239 Cal.App.2d 487, 493, 48 Cal.Rptr. 765, 771 (1966). Here, Bloom acted both for the benefit of the musicians performing at the restaurant and for the restaurant which employed both her and them.

It is true that Bloom was no longer on duty as a cocktail waitress when she ran the errand. However, she had only concluded her shift shortly beforehand and was still at the restaurant when requested to go on the errand. This was substantially within the time and space limit of employment.

Love argues that the "critical piece of evidence" was Bloom's statement during the 1981 deposition that Keller had told the members of the band that Bloom was off duty, implying both knowledge and approval of the errand. We do not find this evidence persuasive, however. Bloom never testified, whether at deposition or at trial, that she heard Keller tell the musicians that she was then off duty and might be willing to obtain the microphone. Although no hearsay objection was made to this testimony at her 1981 deposition, Liberty Mutual was not a party to the lawsuit and had no counsel at the deposition. Her trial testimony clarified that she assumed that Keller told the musicians that she was off duty and, inferentially, available to run an errand.

Liberty Mutual argues that Keller must have manifested his consent to Bloom's trip in some fashion before liability can be imposed, citing the Restatement (Second) of Agency § 221, comment a (1958). Keller consented to the band's use of his car so that the band could play music at the Stag & Hound and presumably benefit the restaurant's business in so doing. Bloom was unquestionably a paid employee of the Stag & Hound who happened to be available after the end of her normal shift to go to Keller's house to obtain equipment for the band. Bloom drove her supervisor's car to her supervisor's house to retrieve a microphone part for the band which was benefiting the business that the supervisor managed. The fact that the direct request for the trip came from a band member is not decisive.

Nor is the fact that Bloom was not being paid to run the errand decisive. Arguably, Bloom was a gratuitous servant when she ran the errand on behalf of the band performing at the restaurant. *Bond v. Cartwright Little League, Inc.,* 112 Ariz. 9, 14, 536 P.2d 697, 702 (1975).

In reviewing the trial court's granting of a motion for judgment notwithstanding the verdict, we must determine whether, viewing the evidence in a light most favorable to the plaintiff, any rational trier of fact could have found for the plaintiff. *Midas Muffler Shop v. Ellison,* 133 Ariz. 194, 197, 650 P.2d 496, 499 (App.1982). A reasonable person could conclude from this evidence that Bloom was acting within the scope of her employment when she went to Keller's house to retrieve a microphone

**40**

part on behalf of musicians performing at the restaurant.

Accordingly, we vacate the order of the trial court and remand with directions to reinstate the judgment of the trial court entered upon the return of the jury's verdict.

LIVERMORE, P.J., and FERNANDEZ, J., concur.