914 P.2d 1306

**STATE of Arizona, and the Department of Administration, Plaintiffs–Appellants,**

v.

**Colleen SCHALLOCK, a single person; Bertha A. Saunders, a married person, Defendants–Appellees.**

**No. 1 CA–CV 92–0410.**

Court of Appeals of Arizona, Division 1, Department D.

Aug. 10, 1995.

Review Granted on Issues 1 and 2 and Denied on other Issues April 23, 1996.*

* Zlaket, V.C.J., of the Supreme Court, recused himself and did not participate in the determination of this matter.

Ryley, Carlock & Applewhite by Robert J. Pohlman, Susan M. Mukai and John C. Lemaster, Phoenix, for plaintiffs-appellants.

Schleier & Engle, P.C. by Tod F. Schleier and Bradley H. Schleier, Phoenix, for defendant-appellee Schallock.

Dillingham, Keilp & Cross by John L. Dillingham, Phoenix, for defendant-appellee Saunders.

OPINION

FIDEL, Judge.

The State appeals from a declaratory judgment that required it to indemnify Allen Heinze, the executive director of the Arizona Prosecuting Attorneys' Advisory Council ("APAAC"), for damages that he caused by sexually harassing APAAC employees. This lawsuit does not concern the direct liability of APAAC, a State entity, for creating or tolerating a hostile work environment; it concerns only whether the State must indemnify Heinze, a State employee, against personal liability for his harassive acts.

The dispositive question arises from the State self-insurance statute, Arizona Revised Statutes Annotated ("A.R.S.") § 41–621, which covers only conduct in the course and scope of employment. We hold that Heinze's tortious acts were not in the course and scope of his employment; that A.R.S. § 41–621 does not extend Heinze indemnity for his conduct; and that the trial court erred in finding the State collaterally estopped from contesting course and scope by a directed verdict in a separate action that was never reduced to judgment.

### BACKGROUND

This matter was resolved upon cross-motions for summary judgment; for that purpose the following facts are not disputed.

Heinze was executive director of APAAC. APAAC is a state governmental council, *see* A.R.S. §§ 41–1830 to 1830.05; Heinze was a state employee. The parties to this action have characterized the APAAC offices as Heinze's "personal sexual playground." Heinze regularly used offensive and obscene language, made obscene gestures, and touched the breasts, buttocks, and crotches of APAAC's female employees. New female employees were told that they should not be

alone with Heinze if they wished to avoid his sexual advances. Male staff attorneys stayed after hours rather than leave Heinze alone with a female employee. There is evidence to support the inference that APAAC board members, to whom Heinze supposedly answered, knew or should have known of his behavior but looked the other way.

At a 1984 APAAC conference, Heinze asked an employee to engage in sexual intercourse; when she refused, he kissed her against her will. At a 1985 APAAC conference, Heinze invited a law clerk to join him in his hot tub; when she refused, he grabbed her and kissed her. At a 1987 Christmas party, Heinze kissed a third employee, who was bruised when she tried to get away. At a 1988 conference in Sedona, Heinze raped a law clerk.

## I. The Schallock Claim

APAAC employed Colleen Schallock, a 23–year-old law student, as a law clerk in the summer of 1988. During that summer, Heinze made obscene gestures, used obscene language, and told off-color jokes in Schallock's presence. In the office, Heinze made explicit sexual comments to Schallock. He touched her breasts and put his hand down her skirt. Schallock was told by other female employees "that Allen Heinze was a 'touchy' and 'grabby' type of person."

At the end of the summer, during an annual conference for the State's prosecuting attorneys in Sedona, Heinze raped Schallock in a hotel room. After the rape, Heinze said he would give her a job at any salary she wanted. Schallock's employment at APAAC ended on August 18, 1988. Heinze sexually assaulted Schallock again in December 1988 after meeting her for lunch.

Schallock reported the first rape to the Sedona Police department in June 1990. Heinze remained Executive Director of APAAC until October 5, 1990, when, in exchange for Heinze's agreement to waive any claims against APAAC, the board of directors accepted his "resignation to a medical retirement state" effective February 1, 1991, and placed him on medical leave until that date. Apparently because the county attorneys and attorney general were members of the APAAC board, Schallock's criminal complaint was referred to the U.S. Attorney. In January 1991 the U.S. Attorney declined to prosecute Heinze for sexual assault.

Schallock filed a civil action against Heinze and APAAC claiming sexual harassment and intentional infliction of emotional distress. She asserted these claims against APAAC both vicariously and independently. She also asserted a negligent hiring, retention, and supervision claim against APAAC.[1]

Trial proceeded to a jury before Judge Robert A. Myers of the Superior Court. At the close of evidence Judge Myers directed a verdict for Schallock on one issue: he found APAAC legally responsible for any sexual harassment by Heinze through August 18, 1988—the last date of Schallock's employment.

The jury found Heinze liable to Schallock "for intentional or reckless infliction of emotional distress and/or sexual harassment in the workplace"; APAAC liable to Schallock "for intentional infliction of emotional distress and/or sexual harassment in the workplace"; APAAC at fault for negligently hiring, retaining, and supervising Heinze; and Schallock not at fault. The jury awarded a verdict of $1,476,553.50 against Heinze and $908,446.50 against APAAC. In an accompanying note, the jury stated:

> We want it to be clear that we have divided the liability in the following manner. Mr. Heinze $1,476,553.50 and APAAC $908,446.50 & total liability is $2,385,000.00

Judge Myers entered judgment against Heinze. Because APAAC and Schallock entered a settlement agreement, the directed verdict was never reduced to an appealable

---

1. State Risk Management defended Heinze pursuant to a reservation of rights, preserving its ability to assert in this separate declaratory judgment action that it owes him no indemnity against personal liability for any verdict.

Before trial, Heinze and Schallock entered a settlement that included, among other provisions, a high/low agreement on the amount to be included in any judgment against Heinze and Schallock's agreement not to enforce the judgment against Heinze personally.

order and there was no final judgment against APAAC.[2]

## II. The Saunders Claim

Bertha A. Saunders started as a secretary with APAAC in April 1984. In the underlying action, Saunders described a June 1984 conference at which Heinze cornered her in a hotel room, held her hands behind her back, and made sexual advances. Saunders also described numerous instances of harassment in the workplace. For example, Heinze "would walk behind female staff and he would stand behind them, he would pull his zipper down, unbuckle his pants and he would simulate the sex act like he was humping them." He also grabbed Saunders's breasts, buttocks, and crotch.

Saunders filed an action against APAAC, Heinze and his wife, and APAAC staff attorneys and board members. She claimed assault, battery, and false imprisonment against Heinze; intentional infliction of emotional distress against all defendants; and tortious interference with employment contract against all defendants except APAAC. She amended her complaint to add an allegation of sexual harassment as a public policy tort.[3] Saunders settled with Heinze. Her claims against the remaining defendants had not been tried when the trial court entered its declaratory judgment in this action.

## III. The Declaratory Judgment Action

State Risk Management filed the present action seeking a declaratory judgment that no defendants were entitled to State cover-

age for the claims against Heinze, Heinze was not entitled to indemnity, and the State was not required to defend Heinze. The State moved for summary judgment contending that Heinze's acts were not subject to State coverage because they were outside the course and scope of his employment.[4] Schallock and Saunders asserted the contrary in cross-motions for summary judgment. These motions came before Judge Stanley Z. Goodfarb, who denied the State's motion and granted the cross-motions of Schallock and Saunders. Finding the State collaterally estopped by Judge Myers's directed verdict from denying its financial responsibility for Heinze's conduct, Judge Goodfarb ordered the State to pay Schallock's full judgment against Heinze and declared it responsible for Heinze's liability to Saunders. From these orders the State appeals.

## DISCUSSION

### I. Collateral Estoppel

The State argues that collateral estoppel does not prevent relitigation of course and scope because there was no final judgment against APAAC in the Schallock case. We agree.

■ Collateral estoppel prevents reconsideration of an issue

when the issue ... to be litigated was actually litigated in a previous suit, a final judgment was entered, and the party against whom the doctrine is to be invoked had a full opportunity to litigate the matter and actually did litigate it, provided such

---

2. The jury verdict was inconsistent with the court's directed verdict that APAAC was responsible for sexual harassment by Heinze through August 18, 1988. If the jury had found as the court directed, some portion of the Heinze and APAAC verdicts necessarily would have overlapped. Only by misunderstanding or ignoring the directed verdict and finding no vicarious liability on the part of APAAC could the jury logically have found Heinze and APAAC liable for wholly separate, non-overlapping, amounts. But the verdict in that case was neither challenged nor appealed, and the parties did not examine its implications in these separate proceedings before Judge Goodfarb. But for our conclusion that, as a matter of law, Heinze's harassive acts toward Schallock were outside the course and scope of his employment, we would be obliged to deter-

mine what, if any, part of the $1,476,553.50 verdict against Heinze might be attributed to damages he inflicted within the course and scope of his employment or, alternatively, whether another trial might be required to identify such damages. We need not work through this conundrum, however, because of our resolution of the legal question of course and scope.

3. In Saunders's claim, as in Schallock's, State Risk Management defended Heinze under a reservation of rights.

4. Our disposition on this ground makes it unnecessary for us to examine additional arguments that the State advanced before the trial court and on appeal.

issue or fact was essential to the prior judgment.

*Chaney Bldg. Co. v. City of Tucson,* 148 Ariz. 571, 573, 716 P.2d 28, 30 (1986). If any of the elements is missing, relitigation of the issue is not precluded.

■ At the close of evidence in the Schallock trial, Schallock moved for a directed verdict on APAAC's liability for any sexual harassment by Heinze. Judge Myers granted Schallock's motion in part and ordered:

for Heinze's sexual harassment of [Schallock], if any, through and including August 18, 1988, APAAC is legally responsible because reasonable jurors could not conclude otherwise.

Judge Goodfarb relied on the preclusive effect of this determination when he held the State liable for the verdict against Heinze.

But because Schallock and APAAC settled, Judge Myers's directed verdict was neither reduced to an appealable order nor embodied in a final judgment against APAAC. Thus, Judge Myers's decision has no preclusive force against the State because the requirement of a final judgment was not met.

## II. Course And Scope

Because the State is not collaterally estopped from contesting coverage for Heinze's personal liability, we must determine whether the State's self-insurance statute, A.R.S. § 41-621, applies to the acts alleged. Section 41-621(A)(3) requires the Department of Administration to obtain insurance on

[t]he state and its departments, agencies, boards and commissions and all officers, agents and employees thereof ... as may be necessary to accomplish the functions or business of the state and its departments, agencies, boards and commissions against liability for acts and omissions of any nature while acting in authorized governmental or proprietary capacities and in the course and scope of employment or authorization except as prescribed by this chapter.

The State correctly asserts that "Heinze is provided coverage only if his acts were performed ... in the course and scope of employment or authorization." Schallock and

Saunders respond that "so long as the tort complained of was caused incidental to the exercise of his supervisory power, Heinze must be deemed as acting within the course and scope of his employment."

■ In Arizona, an employee acts within the course and scope of employment if

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits; [and]

(c) it is actuated, at least in part, by a purpose to serve the master.

Restatement (Second) of Agency § 228 (1957); *see also Love v. Liberty Mut. Ins. Co.,* 158 Ariz. 36, 38, 760 P.2d 1085, 1087 (App.1988).

This court recently held that, under common law principles, "an employee's sexual harassment of another employee is not within the scope of employment." *Smith v. American Express Travel Related Servs. Co.,* 179 Ariz. 131, 136, 876 P.2d 1166, 1171 (App. 1994). In *Smith,* an employee sexually harassed another employee for more than two years. The harassment included unwanted touching and forced sexual encounters. *Id.* at 134, 876 P.2d at 1169. In holding the supervisor's actions beyond the course and scope of employment, we reasoned

[The employee's] actions were not expressly or impliedly authorized as part of his job duties. Nor could his conduct have been reasonably contemplated as being necessarily or probably incidental to his employment. Clearly, [the employee] did not perform a service in furtherance of TRS's business when he harassed and assaulted Smith.

*Id.* at 136, 876 P.2d at 1171.

Following *Smith* and the Restatement (Second) of Agency, we hold that Heinze did not act in the course and scope of employment when he harassed APAAC employees. Though Heinze used his broad supervisory authority as a license for sexually predatory acts, these acts were not intended to serve APAAC but himself.

Schallock and Saunders make the contrary argument that APAAC's tolerance of

Heinze's behavior—its prolonged acceptance of conduct too blatant, egregious, and repetitive to be ignored—amounted in effect to an expansion of the course and scope of his employment to include the license to sexually harass. This argument confuses elements of independent and vicarious liability and obscures the traditional lines of course and scope.

To hold that sexual harassment is not within the course and scope of employment does not foreclose direct recourse against an employer for a supervisor's harassive acts. Victims of sexual harassment may establish the independent liability of employers whose negligent or reckless practices or policies permit sexual harassment in the workplace. *Ford v. Revlon, Inc.*, 153 Ariz. 38, 734 P.2d 580 (1987). Thus, the Schallock jury found APAAC directly liable for infliction of emotional distress, sexual harassment, and negligent hiring, retention, and supervision, and awarded Schallock $908,446.50. And Saunders's direct liability claims against APAAC remain open, unaffected by our ruling.

In short, our holding is limited by the insurance statute, which indemnifies only state employees "acting in authorized governmental or proprietary capacities and in the course and scope of employment or authorization." A.R.S. § 41–621(A)(3). Because Heinze's acts were not within this statute, it affords him no indemnity for his personal liability to the employees upon whom he preyed.

## CONCLUSION

We reverse the judgment entered by the trial court and order the trial court to enter judgment in favor of the State.

GRANT and GERBER, JJ., concur.