938 P.2d 498

Charles B. SMITHEY and Janet Smithey, husband and wife; James R. Crawford and Wenda Crawford, husband and wife; Warren Atcitty and Julie Atcitty, husband and wife; and Gloria Ortega, surviving spouse of Ernesto M. Ortega, deceased, Plaintiffs–Appellants,

v.

Robert D. HANSBERGER, Defendant–Appellee.

No. 1 CA–CV 96–0189.

Court of Appeals of Arizona, Division 1, Department A.

Dec. 31, 1996.

Reconsideration Denied Jan. 30, 1997.

Review Denied June 24, 1997.

Roush, McCracken & Guerrero by Bryn R. Johnson and Charles D. Roush, Phoenix, for Plaintiffs–Appellants Smithey, Crawford and Atcitty.

Ortega & Moreno, P.C. by Daniel R. Ortega, Jr., Phoenix, for Plaintiff–Appellant Ortega.

Lewis and Roca by Stephen M. Bressler, Deborah A. Nye and Susan M. Freeman, Phoenix, for Defendant–Appellee.

## OPINION

RYAN, Judge.

In this appeal, we consider whether a worker who voluntarily drove a van that was part of an employer-provided van pool was acting in the scope of his employment. We conclude that he was, and thus affirm the trial court's decision precluding employees injured in an accident while passengers in the van from suing that co-worker for damages.

## FACTS AND PROCEDURAL HISTORY

On March 22, 1994, appellee Robert Hansberger, an employee of Arizona Public Service ("APS"), was driving an APS van with six other APS employees as passengers when the van was involved in a single vehicle rollover accident. Hansberger and four of the passengers, including appellants Charles B. Smithey, James R. Crawford, and Warren Atcitty, were injured. Two other passengers, including appellant Gloria Ortega's husband, were killed. The men were on their way home from work at the Palo Verde Nuclear Generating Station ("Palo Verde") when the accident happened.

The van involved in the accident was owned and maintained by APS as one of the vehicles in its Palo Verde van pool program. Palo Verde is located approximately fifty miles west of Phoenix. In part because of Palo Verde's remote location, APS provided transportation for its employees to get to and from work. For a number of years, APS provided the rides through contractors who supplied transportation services.

In January 1994, APS purchased the vans used to transport employees for $3.5 million and began administering the van pool program. APS set rules regarding the use of the vans, employed a staff to supervise the program, and hired mechanics to maintain, refuel, and repair the vans. APS employees at Palo Verde who wished to ride in a van had to sign up, and the van pool office assigned each participating employee to a van. The van pool staff also coordinated and approved routes, stops, and changes in ridership. APS appointed a captain and co-captain for each van; only the captain, co-captain and two other designated drivers could drive each van. APS could discipline any employee who violated a van pool rule.

According to APS, the company benefited from the van pool program because: (1) the program was used to recruit and retain qualified employees in the nuclear field; (2) the program helped APS comply with Arizona's Air Quality Act and Maricopa County's Trip Reduction Program; (3) it contributed to APS's goal of becoming a premier corporate citizen; (4) by substituting 230 APS vans for approximately 2415 personal vehicles, the program reduced traffic congestion on the one road leading into Palo Verde; (5) it helped develop social and working relationships among crews and got employees to work on time; (6) it was used as an integral part of APS's federally mandated emergency evacuation plan; and (7) it was good for employee morale.

A few months after the accident, appellants Crawford, Smithey, Atcitty, and Ortega and appellee Hansberger filed claims for workers' compensation benefits with the Industrial Commission of Arizona. APS, which is a self-insured employer, accepted each claim and paid benefits to the claimants.

In January 1995, Crawford, Smithey, and Atcitty, their wives, and Ortega (collectively "plaintiffs" or "appellants") sued Hansberger, alleging that he negligently caused their injuries in the accident. Hansberger filed a motion to dismiss or alternatively motion for summary judgment in which he argued that the lawsuit was barred by the exclusive remedy provision of the Arizona's Workers' Compensation Act, Arizona Revised Statutes Annotated ("A.R.S.") section 23–1022(A). He contended that because plaintiffs had filed workers' compensation claims and accepted benefits, they had declared that their injuries occurred in an accident arising out of and in the course and scope of their employment. Accordingly, Hansberger argued, plaintiffs were estopped from claiming he was not acting in the scope of his employment at the time of the accident. He also argued that the "employer's conveyance" and "payment for travel expenses" exceptions to the "going and coming" rule applied to place him and plaintiffs within the course and scope of their employment when participating in the APS van pool program.

Plaintiffs responded in part by noting that before 1994 (the year APS purchased the vans from its contractor), APS had taken the position that riding in a van pool did not constitute an activity within the scope of employment. They argued that the "employer's conveyance" exception did not apply because it had not been adopted in Arizona, and they asserted that the "payment for travel expenses" exception did not apply because while employees were riding in the van, they provided no service of benefit to APS.

The trial court granted Hansberger's motion. It found that the material facts were not in dispute and that the employer's conveyance exception applied because APS provided the vehicle to the mutual benefit of the employer and employees. The court also ruled that the injured parties were estopped

from denying they were in the course and scope of employment at the time of the accident, and noted that Hansberger's status was no different from that of plaintiffs.

The court denied plaintiffs' motion for reconsideration and entered judgment dismissing the complaint. Plaintiffs timely appealed from the judgment. We have jurisdiction. A.R.S. § 12–2101(B).

## DISCUSSION

Appellants present two arguments: (1) when Hansberger applied for worker's compensation benefits no ruling was made on whether he was acting in the scope of his employment when the accident occurred, and therefore appellants are not estopped from litigating the issue in a civil lawsuit against him; and (2) Hansberger was acting outside the scope of his employment while traveling home from work in the van pool van because he was not providing a benefit to APS.

The facts are undisputed. We consider these facts in the light most favorable to the parties opposing summary judgment. *Hill–Shafer Partnership v. Chilson Family Trust*, 165 Ariz. 469, 472, 799 P.2d 810, 813 (1990). Questions of law are reviewed *de novo*. *Tovrea Land and Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 114, 412 P.2d 47, 52 (1966).

### Estoppel Argument

█ Inferring that the trial court concluded they were estopped from suing Hansberger because they received workers' compensation benefits, appellants argue that this ruling contradicts the holding in *Connors v. Parsons*, 169 Ariz. 247, 818 P.2d 232 (App. 1991). *Connors* held that the trial court must first determine whether a co-worker was acting within the scope of employment when the harm occurred before ruling that workers' compensation benefits preclude an injured employee from suing that co-worker for damages. 169 Ariz. at 252, 818 P.2d at 237.

When Hansberger and appellants applied for and accepted worker's compensation benefits, no determination was made whether Hansberger was acting in the scope of his employment when the accident occurred.

Therefore, under *Connors*, the acceptance of workers' compensation payments by appellants and Hansberger did not estop appellants from claiming that Hansberger was acting outside the scope of his employment. This question must be answered by the court. *See id.* at 251, 818 P.2d at 236.

## Hansberger and the Scope of Employment

"Workers' compensation benefits are an employee's exclusive remedy for injuries suffered on the job against the employer 'or any co-employee acting in the scope of his employment....' A.R.S. § 23–1022(A)." *Ortiz v. Clinton,* 187 Ariz. 294, 296–297, 928 P.2d 718, 720–21 (App.1996). Consequently, the superior court lacks subject matter jurisdiction in a tort action by an injured employee against a co-employee acting within the scope of his employment. *Swichtenberg v. Brimer,* 171 Ariz. 77, 82, 828 P.2d 1218, 1223 (App.1991); *Ringling Bros. & Barnum & Bailey Combined Shows, Inc. v. Superior Court,* 140 Ariz. 38, 45, 680 P.2d 174, 181 (App.1983).

If Hansberger was acting within the scope of his employment, appellants would have no remedy other than workers' compensation benefits. *See* A.R.S. § 23–1022(A); *Dugan v. American Exp. Travel Related Servs., Inc.,* 185 Ariz. 93, 97–98, 912 P.2d 1322, 1326–27 (App.1995). Therefore, we turn to the question of whether Hansberger was acting in the scope of his employment when the accident occurred.

Appellants contend that Hansberger was acting outside the scope of his employment because he was performing no employment-related services for APS. Their first theory to support this contention is that before 1994, APS took the position that its employees were outside the course and scope of their employment while traveling in van pools to and from work at Palo Verde. Appellants surmise that beginning in 1994, APS treated injuries incurred in the vans as work-related because it was more economical to pay workers' compensation benefits than to be subject to tort claims.

We need not decide whether van pool participants were acting in the course and scope of their employment before 1994. APS's characterization of van pool users' status before 1994 does not determine their status at the time of the accident in March 1994. Nor is the court bound by APS's view of whether its employees acted in the course and scope of their employment while participating in a van pool; this question is for the court to decide. *See, e.g., Smith v. American Exp. Travel Related Servs. Co.,* 179 Ariz. 131, 136, 876 P.2d 1166, 1171 (App.1994); *Swichtenberg,* 171 Ariz. at 82, 828 P.2d at 1223. In this case, because the material facts relevant to scope of employment are undisputed, the question can be decided as a matter of law. *See Swichtenberg,* 171 Ariz. at 82, 828 P.2d at 1223 (where jurisdictional fact issues are not intertwined with fact issues concerning merits of claim, resolution of jurisdictional question is for trial court); *Robarge v. Bechtel Power Corp.,* 131 Ariz. 280, 282, 640 P.2d 211, 213 (App.1982) (legal conclusions to be drawn from undisputed facts are properly resolved by court).

Two tests may be applied to determine whether Hansberger was acting in the scope of his employment at the time of the accident. For purposes of A.R.S. section 23–1022(A) co-worker immunity, we use the test for scope of employment developed in tort cases involving *respondeat superior* as a basis for employer liability. *See Ortiz,* 187 Ariz. at 296–297, 928 P.2d at 721–22. The second test we consider is an exception to the "going and coming" rule.

### A. Co-worker Immunity

An employee acts within the scope of employment if the activity "is of the kind the employee is employed to perform, ... occurs substantially within the authorized time and space limit, and ... is actuated at least in part by a purpose to serve the master." *Smith,* 179 Ariz. at 135, 876 P.2d at 1170 (quoting *Love v. Liberty Mut. Ins. Co.,* 158 Ariz. 36, 38, 760 P.2d 1085, 1087 (App. 1988)). Scope of employment is "tied to the employer's right to control the employee's activity at the time of his tortious conduct." *Robarge,* 131 Ariz. at 282, 640 P.2d at 213 (quoting *Luth v. Rogers and Babler Constr. Co.,* 507 P.2d 761, 764 (Alaska 1973)).

Under the first part of this test, at the time of the accident, Hansberger was not engaged in an activity that he was specifically hired to perform. However, we also consider as part of the scope of employment test whether the employer had the right to control the employee's activity. *Id.* at 283, 640 P.2d at 214. Although APS did not hire Hansberger to drive a van as his regular job, it did designate him as a van pool driver. Only van pool participants assigned by APS could drive the vans. Hansberger would not have been allowed to engage in the activity during which the accident occurred if APS had not approved him to drive the van. Although driving the van was not his usual job and he was not paid to do it, it was an activity his employer asked him to do. Therefore, we believe Hansberger's driving of the van meets the first part of the scope of employment test.

The second part of the test asks whether the action occurred substantially within the time and space limit imposed by the employer for the activity. *See Smith,* 179 Ariz. at 135, 876 P.2d at 1170. Hansberger drove from Palo Verde in the van pool at the end of his scheduled work day. He did not deviate from the usual, authorized route taken by the van pool. Therefore, Hansberger's conduct occurred within the authorized time and space limit.

Third, Hansberger's driving of the van served APS. Certainly, the van pool benefited Hansberger and the other participants. However, as noted above, the van pool also benefited APS. The van pool program could not have been successful unless employees were willing to drive and ride in the vans. Hansberger drove the van with the approval of APS. Accordingly, his conduct, at least in part, served APS.

Because Hansberger meets all parts of the scope of employment test, we conclude that he was acting in the scope of his employment for purposes of co-worker immunity at the time of the accident. Therefore, appellants may not bring an action against him.

### B. Going and Coming Rule

■ The "going and coming" rule does not contradict our conclusion because an exception to the rule applies here. Under this rule, when an employee is injured going to or coming from his work place, the accident and resulting injuries do not arise out of or occur in the course and scope of employment. *Pauley v. Industrial Comm'n,* 109 Ariz. 298, 300–01, 508 P.2d 1160, 1162–63 (1973); *J.D. Dutton, Inc. v. Industrial Comm'n,* 120 Ariz. 199, 201, 584 P.2d 1190, 1192 (App.1978); 1 ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION § 15.00 at 4–3 (1996). However, Hansberger argues that two exceptions to the going and coming rule apply here: (1) the "employer's conveyance" exception; and (2) the "payment for travel expenses" exception.

■ The employer's conveyance exception applies when the employer provides transportation to the employee and the travel time appears to benefit the employer. *J.D. Dutton, Inc.,* 120 Ariz. at 201, 584 P.2d at 1192, 1 LARSON, *supra,* § 17.00 at 4–209. The rationale for this exception "is that by taking control of the trip to and from work, the employer has extended the risks of employment and therefore has extended the course of employment." *Torres v. Industrial Comm'n,* 137 Ariz. 318, 321, 670 P.2d 423, 426 (App.1983). In furnishing a vehicle for traveling to and from work, the employer "has, in a sense, sent the employee home on a small ambulatory portion of the premises." *J.D. Dutton, Inc.,* 120 Ariz. at 201, 584 P.2d at 1192 (quoting 1 LARSON, *supra,* § 17.10 at 4–129 (1978)). According to the *Torres* court, the employer's conveyance exception to the going and coming rule should apply in Arizona. 137 Ariz. at 321, 670 P.2d at 426.[1] We

---

1. Courts which have held that employees injured in accidents while going to or coming from work in employer-provided vehicles were in the course and scope of employment include the following: *Daniels v. Commercial Union Ins. Co.,* 5 Ark.App. 142, 633 S.W.2d 396 (1982); *Securex, Inc. v. Couto,* 627 So.2d 595 (Fla.App.1993); *Adams v. United States Fidelity & Guar. Co.,* 125 Ga.App.

232, 186 S.E.2d 784 (1971); *Hansen v. Estate of Harvey,* 119 Idaho 333, 806 P.2d 426 (1991); *Watson v. Grimm,* 200 Md. 461, 90 A.2d 180 (1952); *Schauder v. Pfeifer,* 173 A.D.2d 598, 570 N.Y.S.2d 179 (N.Y.App.Div.1991); *William F. Rittner Co. v. Workmen's Comp.App. Bd.,* 76 Pa. Cmwlth. 596, 464 A.2d 675 (1983); *Pickrel v. Martin Beach, Inc.,* 80 S.D. 376, 124 N.W.2d 182

agree and find that the situation before us falls squarely within this exception.

When the accident happened, Hansberger was driving a van furnished by APS for transportation of its employees to and from work at Palo Verde. APS owned, maintained, repaired, and fueled the vans. It administered the van pool program including approving who drove and who rode in each van pool, appointing captains, and specifying routes and stops. APS issued written rules for van pool participants, and employees who broke the rules were subject to disciplinary measures meted out by APS. As noted above, APS demonstrated that the van pool program benefited it in a number of ways.

Appellants argue that Hansberger incorrectly states the issue as: "After examining the totality of circumstances, can it be said that the van pool program benefits APS?" They maintain that the correct issue is: "After examining the totality of circumstances, can it be said that the service being provided by the employee while riding the vans benefits APS?" Even if appellants have correctly posed the issue, we conclude that the circumstances here show that the use of the vans by its employees benefited APS. The van pool program was important to APS for reasons such as compliance with clean air standards, relieving traffic congestion at the entrance to the plant, and getting employees to work on time. APS could only realize benefits from the program if employees participated in it. Thus, by riding in the vans, the employees, including Hansberger, provided a benefit to their employer. Hansberger's willingness to drive provided an added benefit to APS, as drivers were necessary for the program to succeed.

Because APS furnished the vehicle to Hansberger and the passengers and benefited from their participation in the program, the employer's conveyance exception to the going and coming rule applies here. Therefore, Hansberger was acting in the course and scope of his employment when the accident happened. Consequently, appellants are precluded from suing Hansberger for damages. A.R.S. § 23–1022(A).

Hansberger also argues that the "payment for travel expenses" exception to the going and coming rule operates to show that he was acting in the course and scope of his employment. However, because we hold that the employer's conveyance exception applies, we need not consider this additional exception.

## CONCLUSION

In summary, we conclude that Hansberger was acting in the scope of his employment at the time of the accident in which appellants were injured. Under A.R.S. section 23–1022(A), therefore, worker's compensation is appellants' exclusive remedy against APS and Hansberger, and they may not pursue this action against Hansberger. Accordingly, we affirm the trial court's grant of summary judgment in favor of Hansberger and its dismissal of appellants' complaint against him.

NOYES, P.J., and FIDEL, J., concur.

(1963); *Doering v. Wisconsin Labor & Indus. Review Comm'n,* 187 Wis.2d 472, 523 N.W.2d 142 (App.1994).