IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

BRYSTAL McCLOUD,                          )      2 CA-CV 2009-0116
                                          )      DEPARTMENT A
                    Plaintiff/Appellant,  )
                                          )      O P I N I O N
                    v.                    )
                                          )
THOMAS MAX KIMBRO, an individual,         )
                                          )
                    Defendant/Appellee.   )
                                          )

APPEAL FROM THE SUPERIOR COURT OF COCHISE COUNTY

Cause No. CV200600469

Honorable James L. Conlogue, Judge

AFFIRMED

Stephen Gorey                                                 Tucson
                                          Attorney for Plaintiff/Appellant

Terry Goddard, Arizona Attorney General
  By Daniel P. Schaack                                        Phoenix
                                          Attorneys for Defendant/Appellee

K E L L Y, Judge.

¶1        Appellant Brystal McCloud appeals from the trial court's grant of summary judgment in favor of appellee Thomas Kimbro. She argues summary judgment was improper because a question of fact existed as to whether Kimbro had been acting within

the scope of his public employment when the vehicle he was driving struck her car. Finding no error, we affirm.

## Background

**¶2**      We view the facts in the light most favorable to the party opposing summary judgment and draw all reasonable inferences arising from the evidence in favor of that party. *Prince v. City of Apache Junction*, 185 Ariz. 43, 45, 912 P.2d 47, 49 (App. 1996). In reviewing the trial court's decision, we consider only the evidence presented to the court when it addressed the motion for summary judgment. *Brookover v. Roberts Enters., Inc.*, 215 Ariz. 52, ¶ 8, 156 P.3d 1157, 1160 (App. 2007).

**¶3**      Kimbro, a Department of Public Safety (DPS) officer, was the driver of a state-owned vehicle that struck McCloud's vehicle on April 1, 2005, in Sierra Vista. Kimbro normally worked in Phoenix, where he lived, but at the time of the accident he was temporarily assigned to Douglas and surrounding areas, including Sierra Vista. While there, Kimbro stayed in a local motel.[1]

---

[1]Although the record is unclear, Kimbro asserts and McCloud does not dispute that DPS provided him with a motel room.

¶4 On the day of the accident, Kimbro had begun his work day at 4:00 a.m., ended his scheduled time at noon, and worked some overtime.[2] Shortly before the accident, he stopped at the Sierra Vista DPS station and got the name of a local restaurant. He and other members of his unit, including his supervisor, were driving to the restaurant at the time of the accident. Kimbro was looking for it as he drove, did not see traffic stopped in front of him, and struck McCloud's vehicle. McCloud suffered injuries, incurred medical expenses, lost earnings, and sustained damage to her vehicle. She filed an administrative claim against the State of Arizona, DPS, and Kimbro four days later pursuant to A.R.S. § 12-821.01, but did not file her lawsuit against them until June 27, 2006.[3] This appeal follows the trial court's granting of summary judgment to Kimbro based on the one-year statute of limitations applicable to actions against state employees, A.R.S. § 12-821.

## Discussion

¶5 McCloud argues the trial court erred in granting summary judgment because genuine issues of material fact exist concerning whether Kimbro had been acting

---

[2]Because Kimbro's timesheet for the day of the accident originally listed two hours of overtime, but was changed at some point to reflect three hours of overtime, the parties disputed below when his scheduled work time ended. The exact time his shift ended is not, however, material to determining whether Kimbro was within the scope of his employment under our analysis.

[3]The trial court initially granted the defendants' motion to dismiss all defendants pursuant to Rule 12(b)(6), Ariz. R. Civ. P., because the action had been filed beyond the one-year statute of limitations period applicable to claims against a public entity or employee set forth in A.R.S. § 12-821. We affirmed as to the state and DPS, but reversed and remanded as to Kimbro personally. *McCloud v. State*, 217 Ariz. 82, ¶ 21, 170 P.3d 691, 698 (App. 2007).

within the scope of his employment when the accident occurred. Kimbro counters, in part, that because he was on an "out-of-town" work assignment, he was acting within the course and scope of his employment while traveling to have a meal.

¶6 Summary judgment is proper when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c)(1). "We review de novo whether there are any genuine issues of material fact and whether the trial court applied the law properly." *Dube v. Desai*, 218 Ariz. 362, ¶ 10, 86 P.3d 587, 590 (App. 2008). A mere scintilla of evidence or a slight doubt as to whether a material factual dispute exists is not sufficient to overcome summary judgment. *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). When "the material facts relevant to scope of employment are undisputed, the question can be decided as a matter of law." *Smithey v. Hansberger*, 189 Ariz. 103, 106, 938 P.2d 498, 501 (App. 1996).

Scope of Employment

¶7 Under Arizona law, "[a]n employer is vicariously liable for the negligent or tortious acts of its employee acting within the scope and course of employment." *Baker ex rel. Hall Brake Supply, Inc. v. Stewart Title & Trust of Phoenix, Inc.*, 197 Ariz. 535, ¶ 17, 5 P.3d 249, 254 (App. 2000). An employee's conduct is within the scope and course of employment "only if (a) it is the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; and (c) it is actuated, at least in part, by a purpose to serve the [employer]." *Anderson v. Gobea*, 18 Ariz. App. 277, 280, 501 P.2d 453, 456 (1972). The "concept [of] 'scope of employment' has long been tied

4

to the employer's right to control the employee's activity at the time of his tortious conduct." *Robarge v. Bechtel Power Corp.*, 131 Ariz. 280, 283, 640 P.2d 211, 213 (App. 1982).

¶8        "'[A]n employee is acting within the scope of . . . employment while he is doing any reasonable thing which his employment expressly or impliedly authorizes him to do or which may reasonably be said to have been contemplated by that employment as necessarily or probably incidental to the employment.'" *Smith v. Am. Express Travel Related Servs. Co.*, 179 Ariz. 131, 135-36, 876 P.2d 1166, 1170-71 (App. 1994), *quoting Ray Korte Chevrolet v. Simmons*, 117 Ariz. 202, 207, 571 P.2d 699, 704 (App. 1977); *see also State v. Schallock*, 189 Ariz. 250, 258, 941 P.2d 1275, 1283 (1997) (actions, including those serving personal desires, deemed in scope of employment if incidental to employee's legitimate work activity); *Love v. Liberty Mut. Ins. Co.*, 158 Ariz. 36, 38, 760 P.2d 1085, 1087 (App. 1988) (conduct within scope of employment if, inter alia, "actuated at least in part by a purpose to serve the master").

Out-of-Town Travel

¶9        The parties have not cited any Arizona decision articulating an employer's tort liability for the conduct of an off-duty employee assigned to out-of-town work. Although we have found no case directly on point, we find several instructive.

¶10        In *Anderson*, 18 Ariz. App. at 281-83, 501 P.2d at 457-59, this court relied on the "dual-purpose rule" enunciated in workers' compensation cases in concluding that an employee who was involved in an accident while towing the employer's equipment to work with his own truck, pursuant to his employer's instruction, had been acting within

5

the scope of his employment, even though his commute between his home overnight and his work site had also served his personal interests. We noted that "[a]lthough . . . Workmen's Compensation cases and cases arising under similar social legislation are not necessarily authority for principles giving rise to common law liability under the doctrine of *respondeat superior*, there are instances when the principles are particularly apropos and can be invoked." *Anderson*, 18 Ariz. App. at 280, 501 P.2d at 456 (citation omitted). Although not recited in *Anderson*, for workers' compensation purposes, the rule for overnight traveling workers is that "such workers remain within the course of employment continuously during their travel, even when eating and sleeping, except when a 'distinct departure on a personal errand' has occurred." *Bergmann Precision, Inc. v. Indus. Comm'n*, 199 Ariz. 164, ¶ 10, 15 P.3d 276, 278 (App. 2000), *quoting* 2 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 25.01, at 25-1 to 25-2 (2000).

¶11        In *Davis v. Vumore Cable Co.*, 14 Ariz. App. 411, 484 P.2d 23 (1971), the court addressed the employer's liability for an out-of-town employee using a company truck for a personal errand. The defendant company provided vehicles for its crew of men working out of town, but instructed them not to use the vehicles on Sundays except to go to and from meals. *Id*. at 413, 484 P.2d at 25. One employee used a truck to go to a meal, brought the truck back to the hotel, and then took the truck out later and had an accident. *Id*. at 412-13, 484 P.2d at 24-25. Because the accident had not been in conjunction with authorized travel to a meal, the court determined that it occurred while the employee "was on a frolic of his own." *Id*. at 413, 484 P.2d at 25.

6

¶12    Courts in other jurisdictions have addressed the principles of respondeat superior when an employee is assigned to be out of town for several days. A Colorado court explained as follows:

> Acts within the scope of employment include those that are necessarily incidental to the employment. For example, if an employee is required to eat and sleep away from home in order to carry on the employer's business, then the employee is within the scope of employment while doing so. The employee is likewise within the scope of employment while traveling to and from such necessary lodging and meals.

*Pham v. OSP Consultants, Inc.*, 992 P.2d 657, 659 (Colo. Ct. App. 1999) (ultimately concluding trip to bar not within the course and scope of employment); *Int'l Bus. Machines, Inc. v. Bozardt*, 275 S.E.2d 376, 377-78 (Ga. Ct. App. 1980) (eating may be necessary incident to work of employee traveling on employer's business); *Michaleski v. Western Preferred Cas. Co.*, 472 So. 2d 18, 21 (La. 1985) (employee in course and scope of employment when trip employment-connected, and employer paid expenses and anticipated necessity of traveling to meals by paying per diem for food and gasoline expenses).

¶13    Similarly, a federal district court relied on the "traveling employee" rule and the "distinct departure" tests used in Florida workers' compensation cases to determine tort liability, stating,

> the "distinct departure" test should be strictly applied in tort cases, where employer liability is not so broadly read. Thus, while activities related to the necessities of travel, such as eating in restaurants or sleeping in hotels, may remain within the scope of employment under tort law, those related to mere amusements do not.

*Liberty Mut. Ins. Co. v. Electronics Sys., Inc.*, 813 F. Supp. 802, 810 (S.D. Fla. 1993). Because the employee already had eaten dinner, the court held as a matter of law that he had been acting outside the scope of his employment when he had driven to a bar solely for personal enjoyment. *Id.*

¶14        McCloud acknowledges Kimbro "was stationed in the Phoenix area and had been temporarily assigned to a DPS undercover unit 'out of town' before the accident occurred and that he did not return to the Phoenix area until after the accident happened," but she argues he was not on "'out-of-town travel' as that term is normally interpreted" because he had already reached his motel in Douglas. This interpretation conflicts with the authority cited above. McCloud also argues that if Kimbro's shift had ended for the day when the accident occurred, he was not acting within the scope of his employment. That distinction, however, does not apply to our analysis when the employee is going to a restaurant for a meal while on out-of-town travel. *Michaleski*, 472 So. 2d at 21.

¶15        Finally, both parties attach significance to Section R2-10-107 of the Arizona Administrative Code which sets forth the circumstances under which the State of Arizona Department of Risk Management program provides liability insurance as established by the legislature in A.R.S. § 41-621. The regulation establishes that "[t]he Department provides liability coverage within the limitations of A.R.S. § 41-621 for an officer, agent, or employee while driving a state-owned or other vehicle in the course and scope of employment." Ariz. Admin. Code R2-10-107(A)(1). The regulation also addresses circumstances under which an officer, agent, or employee is covered while

8

driving. Ariz. Admin. Code R2-10-107(A)(2), (3). Section 2(d) of the regulation provides that an officer, agent, or employee is within the course and scope of employment when driving a state-owned vehicle if driving "to and from meals while on out-of-town travel." Ariz. Admin. Code R2-10-107(A)(2)(d).

¶16 Nevertheless, the state's provision of liability coverage does not, by itself, impose liability on the state. Section 41-621(O)(1), A.R.S., specifically states:

> Neither the authority provided by this section to insure, nor the exercise of such authority, shall:
>
> 1. Impose any liability on this state or the departments, agencies, boards and commissions or any officers, agents and employees of this state unless such liability otherwise exists.

*See also Schallock*, 189 Ariz. at 255, 941 P.2d at 1280. Thus, even if the state agrees to provide liability coverage under certain circumstances for an employee driving a state-owned vehicle, that agreement does not impose liability on the state for the employee's actions unless it otherwise exists.

¶17 We hold that an employee on out-of-town travel status is within the course and scope of his employment and subjects his employer to vicarious liability while traveling to and from a restaurant for a regular meal. The undisputed facts show Kimbro was on out-of-town travel while on temporary assignment in Douglas and that he was driving to a restaurant for a meal at the time of the accident. Thus, he was traveling on an assignment of the kind he was employed to perform; was within the authorized time and space limits of his temporary assignment in southern Arizona; and was acting, at least in part, by a purpose to serve his employer, because eating is necessarily incidental to a

9

multiple-day assignment. *See Anderson*, 18 Ariz. App. at 280, 501 P.2d at 456; *Smith*, 179 Ariz. at 135-36, 876 P.2d at 1170-71; *Liberty Mut. Ins. Co.*, 813 F. Supp. at 810; *Schallock*, 189 Ariz. at 258, 941 P.2d at 1283 (actions deemed motivated to serve employer if incidental to employee's legitimate work activity).

¶18 Kimbro, as the moving party, is entitled to judgment as a matter of law because there is no genuine dispute as to any material fact and only one reasonable inference to be drawn from those facts. *Ancell v. Union Station Assocs., Inc.*, 166 Ariz. 457, 459, 803 P.2d 450, 452 (App. 1990); *Smithey*, 189 Ariz. at 106, 938 P.2d at 501; *Robarge*, 131 Ariz. at 283, 640 P.2d at 213 (legal conclusions to be drawn from undisputed facts are properly resolved by court). Kimbro was within the course and scope of his employment at the time of the accident and summary judgment was appropriate.

**Disposition**

¶19 The judgment of the trial court is affirmed.

/s/ *Virginia C. Kelly*
VIRGINIA C. KELLY, Judge


CONCURRING:


/s/ *Joseph W. Howard*
JOSEPH W. HOWARD, Chief Judge


/s/ *Philip G. Espinosa*
PHILIP G. ESPINOSA, Presiding Judge