258 P.3d 304

**Aaron ENGLER, an unmarried man, Plaintiff/Appellant,**

v.

**GULF INTERSTATE ENGINEERING, INC., a corporation, Defendant/Appellee.**

**No. 1 CA–CV 10–0561.**

Court of Appeals of Arizona, Division 1, Department A.

Aug. 9, 2011.

Don B. Engler, P.C. By Don B. Engler, Yuma, and Aboud & Aboud, P.C. By Michael J. Aboud, Tucson, Attorneys for Plaintiff/Appellant.

Holloway Odegard Forrest & Kelly, P.C. By Charles M. Callahan, Peter C. Kelly, II, Phoenix, Attorneys for Defendant/Appellee.

## OPINION

WINTHROP, Judge.

¶ 1 Plaintiff, Aaron Engler, appeals the summary judgment entered in favor of Defendant, Gulf Interstate Engineering, Inc. ("Gulf"). Engler was injured when the motorcycle he was riding collided with a vehicle driven by Ian Gray, a Gulf employee. Engler filed suit against Gray and Gulf, alleging in part that at the time of the accident, Gray was acting within the course and scope of his employment with Gulf, and therefore Gulf was vicariously liable for Gray's alleged negligence based on the doctrine of respondeat superior. The superior court granted summary judgment in favor of Gulf and denied Engler's motions for new trial and reconsideration. Engler maintains that we must reverse the court's final judgment because the reasoning of a recent Arizona Court of Appeals opinion, *McCloud v. Kimbro* (*"McCloud II"*), 224 Ariz. 121, 228 P.3d 113 (App.2010), requires us to find that Gray was acting in the course and scope of his employment with Gulf at the time of the accident. Gulf argues that *McCloud II* is factually distinguishable and should be limited in its scope or, in the alternative, was wrongly decided. For the following reasons, we decline to follow the reasoning set forth in *McCloud II* and agree with the superior court that Gulf is entitled to summary judgment on Engler's vicarious liability claim. We therefore affirm.

## FACTS AND PROCEDURAL HISTORY

¶ 2 As the parties have previously recognized, the material facts related to whether Gray was acting in the course and scope of his employment with Gulf at the time of the accident are essentially undisputed. To the extent that any dispute exists, we view the facts and reasonable inferences in the light most favorable to Engler because we are reviewing a decision granting summary judgment in favor of Gulf. *See Orme Sch. v. Reeves,* 166 Ariz. 301, 309–10, 802 P.2d 1000, 1008–09 (1990).

¶ 3 Gulf is an energy consulting company, and its main office is located in Houston, Texas. Gray is employed by Gulf as a full-time, salaried, senior principal engineer.[1] Gray's engineering position is based in Houston, where he resides. In 2007 and 2008, however, Gray was extensively involved in the design and construction of a natural gas compressor station located in Los Algodones, Mexico. While they worked on this project, Gray and other Gulf employees stayed in hotels in Yuma, Arizona, and commuted approximately ten to fifteen miles to Mexico each day.

¶ 4 Late in 2007, Gray flew from Houston to San Diego where, using his personal credit card, he rented a car to drive to Yuma. Gray utilized the vehicle for both business and personal use while in Yuma, and he was entitled to reimbursement from Gulf for the vehicle's rental cost, as well as for the fuel expended for business purposes. Gulf also reimbursed Gray for his hotel lodging and three meals per day while working on the project. Gray would sometimes buy food and eat either at the job site in Mexico or in his hotel room rather than at a restaurant.

¶ 5 Although Gulf provided a common vehicle to transport its employees from the hotel to the work site in Mexico, Gray generally used his rental car to travel to and from work. Gray's work day would begin at approximately 7:00 a.m. each day, when he and other Gulf employees would arrive at the project's job site. The trip into Mexico from the United States took only a few minutes, but the return trip at the end of the day could take several hours due to border delays. Although Gulf did not usually pay its employees for travel to or from a job site, given the unusual circumstance of having to cross an international border to get to and from work, and given the often significant delays in returning to Yuma, Gulf generally considered Gray's work day to have concluded when he arrived back at his hotel rather than when he left the job site.

¶ 6 After Gray and the other Gulf employees returned to their hotels in Yuma, they were free to do whatever they wanted until they arrived at work the next day. During this time, Gulf did not attempt to supervise its employees or direct or control their activities in any way.

¶ 7 On December 11, 2007, Gray and another Gulf employee, a younger engineer named Jason Shing, rode together in Gray's rental car and arrived at the work site in Mexico at approximately 7:00 a.m. Gray billed 12.5 hours that day, and returned to the hotel at approximately 7:30 p.m. Gray changed from his work attire and did no further work after returning to his hotel room.

¶ 8 Later that evening, Gray and Shing went to dinner at a restaurant in Yuma. Gray drove the rental car to the restaurant. Neither Gray nor Shing conducted any work during this time. After finishing their meal, Gray and Shing left the restaurant and headed back toward the hotel in the rental vehicle. On the trip back, the vehicle driven by Gray was involved in a collision with a motorcycle driven by Engler.

¶ 9 Engler brought suit for personal injury against Gray and Gulf, alleging Gray's negligence and Gulf's vicarious liability. Gulf moved for summary judgment with regard to Engler's claim against it. Gulf argued that it could not be held liable under the doctrine of respondeat superior because Gray was not acting in the course and scope of his employment with Gulf at the time of the accident and "no reasonable juror could conclude that Gulf should be held vicariously liable for the

---

1. Gray is nonetheless eligible for "overtime" pay at a regular hourly rate in specified instances if he works more than forty billable hours per week.

actions of its off-duty employee (defendant Ian Gray)." Engler filed a response and cross-motion for summary judgment, arguing that Gray was acting in the course and scope of his employment with Gulf at the time of the accident because Gulf's "requirement that Mr. Gray travel to and live at the location of his employer's project was not merely a large part of Mr. Gray's employment—it was his employment." Engler contended that determination of the course and scope of employment under the doctrine of respondeat superior should be viewed broadly, encompassing workers' compensation principles, to find that Gray's activities while in Yuma were "solely to serve the business purposes of Gulf Interstate until he returned" to Houston. Gulf replied that utilizing the "expansive standard" espoused by Engler would "ignore binding precedent and greatly expand the law of *respondeat superior* tort liability in Arizona." Citing *Robarge v. Bechtel Power Corp.*, 131 Ariz. 280, 640 P.2d 211 (App.1982), Gulf maintained that "the law is clear [that] the employer must have the right to control the activities of the employee *at the time of the alleged injury* in order for the plaintiff to prevail on a vicarious liability theory."

¶ 10 The superior court granted summary judgment in favor of Gulf. Thirteen days later, however, a panel of the Arizona Court of Appeals issued its opinion in *McCloud II*, which held "that an employee on out-of-town travel status is within the course and scope of his employment and subjects his employer to vicarious liability while traveling to and from a restaurant for a regular meal." 224 Ariz. at 125, ¶ 17, 228 P.3d at 117. The court

reasoned that "eating is necessarily incidental to a multiple-day assignment." Id. (citations omitted). Engler filed a motion for new trial, asserting that given the similarity in facts, the recent decision in *McCloud II* was " 'on point' and controlling in this case." Concluding that *McCloud II* was "a narrower holding" distinguishable from the instant case on the facts and law because it involved a Department of Public Safety ("DPS") officer ("Officer Kimbro"), who was driving a state-owned vehicle and was subject to provisions of the Arizona Administrative Code ("A.A.C."),[2] the superior court denied Engler's motion for new trial. The court noted that Gray "was not acting pursuant to a statute defining his course and scope of employment" and "was not driving a vehicle owned by the company for whom he was working."[3] Engler moved for reconsideration of the order denying his motion for new trial, but the superior court denied the motion and entered final judgment in favor of Gulf.

¶ 11 The judgment included language from Rule 54(b), Ariz. R. Civ. P., and Engler filed a timely notice of appeal from that judgment. We have jurisdiction pursuant to A.R.S. § 12–2101(A)(1) (West 2011).[4]

## STANDARD OF REVIEW

¶ 12 We review *de novo* the superior court's grant of summary judgment and application of the law. *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12, 69 P.3d 7, 11 (2003); *State Comp. Fund v. Yellow Cab Co.*, 197 Ariz. 120, 122, ¶ 5, 3 P.3d 1040, 1042 (App. 1999). As we have recognized, in our review,

---

**2.** Subsection (A)(1) of A.A.C. R2–10–107 provides for liability coverage within specified limitations "for an officer, agent, or employee while driving a state-owned or other vehicle in the course and scope of employment." For the purpose of determining eligibility for liability coverage, subsection (A)(2) further provides as follows:

An officer, agent, or employee operates a state-owned vehicle within the course and scope of employment if driving:
 a. On authorized state business,
 b. To and from work,
 c. To and from lunch on a working day,
 d. To and from meals while on out-of-town travel.

**3.** The court in *McCloud II*, however, appears to have rejected any reliance on A.A.C. R2–10–107 for its holding when it recognized that "the state's provision of liability coverage does not, by itself, impose liability on the state." 224 Ariz. at 125, ¶¶ 15–16, 228 P.3d at 117 (citing Ariz.Rev. Stat. ("A.R.S.") § 41–621(O)(1) (2004); *State v. Schallock*, 189 Ariz. 250, 255, 941 P.2d 1275, 1280 (1997)). We have no quarrel with the *McCloud II* analysis regarding this particular issue.

**4.** The Arizona Legislature recently renumbered A.R.S. § 12–2101. *See* 2011 Ariz. Sess. Laws, ch. 304, § 1 (1st Reg. Sess.) (effective July 20, 2011).

we construe the facts and reasonable inferences in the light most favorable to the opposing party. *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund,* 201 Ariz. 474, 482, ¶ 13, 38 P.3d 12, 20 (2002); *Strojnik v. Gen. Ins. Co. of Am.,* 201 Ariz. 430, 433, ¶ 10, 36 P.3d 1200, 1203 (App.2001). Summary judgment is proper when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Orme Sch.,* 166 Ariz. at 309, 802 P.2d at 1008; Ariz. R. Civ. P. 56(c)(1); *see also Smithey v. Hansberger,* 189 Ariz. 103, 106, 938 P.2d 498, 501 (App.1996) (recognizing that when "the material facts relevant to scope of employment are undisputed, the question can be decided as a matter of law" (citing *Swichtenberg v. Brimer,* 171 Ariz. 77, 82, 828 P.2d 1218, 1223 (App.1991); *Robarge,* 131 Ariz. at 282, 640 P.2d at 213 (recognizing that legal conclusions to be drawn from undisputed facts are properly resolved by the court))). We may affirm the entry of summary judgment if it is appropriate for any reason. *See City of Tempe v. Outdoor Sys., Inc.,* 201 Ariz. 106, 111, ¶ 14, 32 P.3d 31, 36 (App.2001) (citing *Guo v. Maricopa County Med. Ctr.,* 196 Ariz. 11, 15, ¶ 16, 992 P.2d 11, 15 (App. 1999)).

## ANALYSIS

¶ 13 In *McCloud II,* Officer Kimbro was a DPS officer who normally worked in Phoenix, where he lived, but who had been temporarily assigned to Douglas, Arizona, and the surrounding areas, including Sierra Vista. 224 Ariz. at 122, ¶ 3, 228 P.3d at 114. While there, Officer Kimbro stayed in a local motel. *Id.* On the day of the accident, Officer Kimbro's work day began at 4:00 a.m. and was to conclude at noon, although he worked some overtime.[5] 224 Ariz. at 122, ¶ 4, 228 P.3d at 114. Shortly before the accident, he stopped by the Sierra Vista DPS office, where he obtained the name of a local restaurant. *Id.* He and several members of his unit, including his supervisor, were travelling to the restaurant when the state-owned vehicle he

was driving struck Brystal McCloud's vehicle. *Id.*

¶ 14 McCloud timely filed a notice of claim against the State of Arizona, DPS, and Officer Kimbro, *see* A.R.S. § 12–821.01 (2003), but did not file her lawsuit against them until more than one year after the accident. *Id.* The trial court granted a motion to dismiss all of the defendants pursuant to Rule 12(b)(6), Ariz. R. Civ. P., because the action had been filed beyond the one-year statute of limitations period applicable to claims against a public entity or employee as set forth in A.R.S. § 12–821 (2003). *Id.* at n. 3. The court of appeals affirmed as to the state and DPS, but reversed and remanded as to Officer Kimbro personally because a material fact question existed whether he was acting within the course and scope of his employment at the time of the accident. *Id.; see also McCloud v. State ("McCloud I"),* 217 Ariz. 82, 91–92, ¶¶ 27–33, 170 P.3d 691, 700–01 (App.2007). McCloud's claim against Officer Kimbro could only be timely if the officer had been acting outside the course and scope of his employment at the time of the accident. *McCloud I,* 217 Ariz. at 91, ¶ 27, 170 P.3d at 700.

¶ 15 On remand, the trial court again granted summary judgment in favor of Officer Kimbro based on the one-year statute of limitations applicable to actions against state employees. *See McCloud II,* 224 Ariz. at 122–23, ¶ 4, 228 P.3d at 114–15. McCloud appealed, arguing that genuine issues of material fact existed concerning whether Officer Kimbro had been acting within the course and scope of his employment when the accident occurred. *Id.* at 123, ¶ 5, 228 P.3d at 115. The court of appeals affirmed, holding that regardless whether Officer Kimbro was off-duty at the time of the accident, "an employee on out-of-town travel status is within the course and scope of his employment and subjects his employer to vicarious liability while traveling to and from a restaurant for a regular meal." *Id.* at 125, ¶ 17, 228 P.3d at 117. As we have noted, the court

---

5. Although the parties disputed whether Officer Kimbro's work time had ended, the *McCloud II* court concluded that "[t]he exact time his shift ended is not [ ] material to determining whether

Kimbro was within the scope of his employment" under the court's analysis. 224 Ariz. at 122 n. 2, ¶ 4, 228 P.3d at 114 n. 2.

reasoned that Officer Kimbro was acting to serve his employer because eating a meal was "necessarily incidental" to the officer's multiple-day assignment. *Id.* (citations omitted).

¶ 16 In this case, the legal question that we must decide is whether Gray was acting within the course and scope of his employment with Gulf when the accident involving Engler occurred. Engler argues the superior court erred in granting Gulf's motion for summary judgment because the reasoning in *McCloud II* requires finding that Gray was acting within the course and scope of his employment with Gulf at the time of the accident. Engler maintains that Gray, like Officer Kimbro, was on out-of-town assignment when he was involved in an accident while on his way to or from a restaurant for dinner and, because eating a meal was "necessarily incidental" to Gray's multiple-day assignment, Gray was within the course and scope of his employment at the time. Gulf argues that *McCloud II* is factually distinguishable and should be limited in its scope or, in the alternative, was wrongly decided.[6]

 ¶ 17 In Arizona, an employer may be held vicariously liable under the doctrine of respondeat superior for the negligent acts of its employee acting within the course and scope of employment. *Baker ex rel. Hall*

*Brake Supply, Inc. v. Stewart Title & Trust of Phoenix, Inc.*, 197 Ariz. 535, 540, ¶ 17, 5 P.3d 249, 254 (App.2000); Restatement (Third) of Agency ("Restatement") § 7.07(1) (2006). For an employer to be held vicariously liable for an employee's negligent acts, the employee must be (1) subject to the employer's control or right of control, and (2) acting in furtherance of the employer's business. *Robarge*, 131 Ariz. at 283, 640 P.2d at 214; *see also Baker*, 197 Ariz. at 540, ¶ 17, 5 P.3d at 254 (stating that an employee's conduct falls within the scope of employment "if it is the kind the employee is employed to perform, it occurs within the authorized time and space limits, and [it] furthers the employer's business" (citing *Smith v. Am. Express Travel Related Servs. Co.*, 179 Ariz. 131, 135–36, 876 P.2d 1166, 1170–71 (App. 1994); *Ohio Farmers Ins. Co. v. Norman*, 122 Ariz. 330, 331–32, 594 P.2d 1026, 1027–28 (1979))). An employer's control or right to control is measured at the time of the employee's tortious conduct. *Smithey*, 189 Ariz. at 106, 938 P.2d at 501. In other words, the employee generally must be subject to the employer's control or right of control *at the time of the accident.* *Carnes v. Phoenix Newspapers, Inc.*, 227 Ariz. 32, 35, ¶ 10, 251 P.3d 411, 414 (App.2011) (citing *Robarge*, 131 Ariz. at 283, 640 P.2d at 214).[7] "Whether an

---

6. As an initial matter, we reject Gulf's argument that this case may be factually differentiated from *McCloud II* on the basis that, by virtue of his status as a law enforcement officer, Officer Kimbro could be determined to be acting within the scope of his employment even when off-duty because the state had a right to control his private, off-duty conduct and he was authorized, if not duty-bound, to intervene if he witnessed a crime or other incident likely to invoke police action on his way to or from his meal. The court in *McCloud I* rejected the reasoning when it found "unavailing" the state's argument that Officer Kimbro was necessarily acting within the scope of his employment on this basis. 217 Ariz. at 92, ¶ 31, 170 P.3d at 701 ("Adopting the state's position would mean that an off-duty police officer would always be acting within the scope of his or her employment merely because some potential duty to act could arise, regardless of the attendant circumstances."). Because we agree with the rationale in *McCloud I*, we reject Gulf's attempt to differentiate this case on the aforementioned basis.

7. In *Carnes*, this court applied the "going and coming rule" and declined to adopt the "employ-

ee's own conveyance rule" in finding that a newspaper delivery person was not acting within the course and scope of her employment as she drove her vehicle home after completing her deliveries for the day. 227 Ariz. at 34, ¶ 1, 251 P.3d at 413. In general, under the going and coming rule, "an employer is not liable for the tortious acts of his employee while the employee is going to or returning from his place of employment." *Id.* at 35, ¶ 11, 251 P.3d at 414 (quoting *State v. Superior Court (Schraft)*, 111 Ariz. 130, 132, 524 P.2d 951, 953 (1974) (recognizing that reimbursement of a National Guardsman's travel expenses in the form of a mileage allowance did not bestow in the state a right of control)). The employee's own conveyance rule is a workers' compensation principle that operates as an exception to the going and coming rule by providing that an employee's trip to and from work is within the course of employment if, as part of the job, the employee is required to bring along his or her own vehicle for use during the workday. *Id.* at 36, ¶ 15, 251 P.3d at 415 (citing 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 15.05[1], at 15-14 (2009)). Although Carnes argued that similar principles had

employee's tort is within the scope of employment is generally a question of fact. It is a question of law, however, if the undisputed facts indicate that the conduct was clearly outside the scope of employment." *McCloud I*, 217 Ariz. at 91, ¶ 29, 170 P.3d at 700 (quoting *Smith*, 179 Ariz. at 136, 876 P.2d at 1171 (internal citations omitted)); *see also* Restatement § 7.07(2) ("An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer.").

¶ 18 As the court in *McCloud II* implicitly recognized, no previous Arizona opinion had "articulat[ed] an employer's tort liability for the conduct of an off-duty employee assigned to out-of-town work." 224 Ariz. at 123, ¶ 9, 228 P.3d at 115.[8] Nevertheless, the court found the basis for such liability by relying on a principle of workers' compensation:

> [F]or workers['] compensation purposes, the rule for overnight traveling workers is that "such workers remain within the course of employment continuously during their travel, even when eating and sleep-

ing, except when a 'distinct departure on a personal errand' has occurred."

224 Ariz. at 124, ¶ 10, 228 P.3d at 116 (quoting *Bergmann Precision, Inc. v. Indus. Comm'n*, 199 Ariz. 164, 166, ¶ 10, 15 P.3d 276, 278 (App.2000) (quoting 2 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 25.01, at 25–1 to 25–2 (2000))).

■ ¶ 19 We recognize that principles arising from workers' compensation cases may be instructive when addressing potential liability under the doctrine of respondeat superior. *See Ortiz v. Clinton*, 187 Ariz. 294, 298, 928 P.2d 718, 722 (App.1996); *Anderson v. Gobea*, 18 Ariz.App. 277, 280–83, 501 P.2d 453, 456–59 (1972) (applying the "dual-purpose" exception to the going and coming rule and recognizing that "there are instances when [workers' compensation] principles are particularly apropos and can be invoked" in tort cases).[9]

¶ 20 "Nevertheless, the rules adopted for work[ers'] compensation cases should not be mechanically applied in negligence cases."

been embraced in Arizona workers' compensation cases, this court concluded that it "need not evaluate whether the employee's own conveyance rule is established in our workers' compensation law" because the court did "not find the rule to be applicable in a tort action to impose respondeat superior liability." *Id.* at 36 n. 2, ¶ 16, 251 P.3d at 415 n. 2. Similarly, in *Robarge*, this court declined to apply a workers' compensation principle as an exception to the going and coming rule in a tort case. 131 Ariz. at 282–83, 640 P.2d at 213–14.

8. Although the court in *McCloud II* "found no case directly on point" in extending an employer's tort liability for the conduct of an off-duty employee assigned to out-of-town work, it did find a few cases "instructive," including *Davis v. Vumore Cable Co.*, 14 Ariz.App. 411, 484 P.2d 23 (1971), in which this court addressed an employer's potential vicarious tort liability for an out-of-town employee's unauthorized use of a company truck. *See* 224 Ariz. at 123–24, ¶¶ 9, 11, 228 P.3d at 115–16. In *Davis*, the employer provided vehicles for its out-of-town workers but instructed them not to use the vehicles on Sundays, when the workers were off, except to travel to and from meals. 14 Ariz.App. at 413, 484 P.2d at 25. One Sunday, an employee used a company truck to go to a meal, returned and parked the truck, then took the truck out later and had an accident. *Id.* at 412–13, 484 P.2d at 24–25. Because the accident occurred while the employ-

ee "was on a frolic of his own," the court decided as a matter of law that the employee was not acting within the scope of his employment for the purpose of applying the doctrine of respondeat superior. *Id.* at 413–14, 484 P.2d at 25–26. The court, however, did not address, much less decide, whether respondeat superior would have applied if the employee had the accident during a period of authorized use rather than while on a frolic.

9. The *McCloud II* court also found *Anderson* "instructive." *See* 224 Ariz. at 123–24, ¶¶ 9–10, 228 P.3d at 115–16. In Anderson, an employee following the directions of his employer used his own pick-up truck to bring to work an air compressor his employer had rented. 18 Ariz.App. at 279, 281, 501 P.2d at 455, 457. The employee was involved in an accident with Anderson, who claimed that the employer was liable under the doctrine of respondeat superior. *Id.* at 279–81, 501 P.2d at 455–57. This court determined that the carrying by the employee of property belonging to his employer was not merely incidental, and the business mission of the employee's trip was of such character or importance that it would have necessitated a trip by someone else if the employee had not handled it in combination with his otherwise personal journey to or from work; thus, a "dual-purpose exception" to the going and coming rule applied, and the employer was not entitled to a directed verdict. *Id.* at 282–83, 501 P.2d at 458–59.

*Robarge,* 131 Ariz. at 282, 640 P.2d at 213. In deciding whether an employee acted within the scope of employment in a tort case, as opposed to a workers' compensation case, the doctrine of respondeat superior is the standard against which the determination is made, and although concepts borrowed from workers' compensation law can be considered, they will not be controlling. *Id.* at 283, 640 P.2d at 214. "The reason workers' compensation law is not controlling in a tort action is that workers' compensation law and respondeat superior serve different purposes and, therefore, differ in scope and application." *Carnes,* 227 Ariz. at 37, ¶ 17, 251 P.3d at 416 (citing *Robarge,* 131 Ariz. at 282, 640 P.2d at 213).

¶ 21 In *Robarge,* this court rejected the argument that the rules adopted for workers' compensation cases should necessarily apply in determining whether an employee was acting in the "course and scope of employment" in a negligence action:

> While workmen's compensation law and respondeat superior doctrine both involve allocations of costs regarding industrial accidents, they differ in scope. Workmen's compensation benefits turn solely upon whether the employee was injured while performing an activity related to his job—and "relatedness" is usually a function of benefit to the employer. In contrast, respondeat superior subjects employers to liability for injuries suffered by an indefinite number of third persons. To limit this burden of liability, the narrower concept, "scope of employment," has long been tied to the employer's right to control the employee's activity at the time of his tortious conduct.... We therefore reject the (appellant's) argument that workmen's compensation law be applied in this tort case.

131 Ariz. at 282, 640 P.2d at 213 (quoting *Luth v. Rogers & Babler Constr. Co.,* 507 P.2d 761, 764 (Alaska 1973)).

¶ 22 In *Carnes,* this court expanded on the *Robarge* analysis in recognizing the differing purposes of workers' compensation statutes and the doctrine of respondeat superior:

> The purpose of workers' compensation statutes is to shift the burden of loss attributed to work-related accidents from the individual employee and "place the burden of injury upon the industry and the community as a whole." *Hannon v. Indus. Comm'n,* 9 Ariz.App. 231, 232, 451 P.2d 44, 45 (1969). In workers' compensation cases, the employer's responsibility is limited to the employees, and workers' compensation benefits turn on whether the employee was injured while performing a work-related activity. *See Robarge,* 131 Ariz. at 28[2], 640 P.2d at 213. The test of work-relatedness in workers' compensation cases focuses on whether the accident arose out of and in the course of employment. *See Keovorabouth v. Indus. Comm'n,* 222 Ariz. 378, 381, ¶ 8, 214 P.3d 1019, 1022 (App.2009).
>
> On the other hand, the doctrine of respondeat superior encourages employers to supervise their employees to discourage tortious conduct by requiring employers to compensate victims injured by the tortious acts of employees within the scope of employment. An employer's vicarious liability under the doctrine of respondeat superior extends to an indeterminate number of people and is not limited to employees and their dependents as is worker's compensation. To impose respondeat superior liability requires the narrower scope-of-employment test instead of the broader work-related test from workers' compensation. *See Robarge,* 131 Ariz. at 28[2]–8[3], 640 P.2d at 213–14.

227 Ariz. at 37, ¶¶ 18–19, 251 P.3d at 416. We agree with the long-standing reasoning espoused in *Robarge* and further enunciated in *Carnes.*

¶ 23 A case relied on in *McCloud II* for its statement in dicta that an employee required to eat and sleep away from home in order to carry on the employer's business is "within the scope of employment while traveling to and from such necessary lodging and meals," *Pham v. OSP Consultants, Inc.,* 992 P.2d 657, 659 (Colo.Ct.App.1999), also recognized that "despite some similarities in analysis, the scope of employment for purposes of workers' compensation and *respondeat superior* liability is not always the same." *Id.* at 660. In *Pham,* the Colorado Court of Ap-

peals acknowledged "a fundamental difference" between liability in workers' compensation cases and liability under the doctrine of respondeat superior:

> [W]hile perhaps ninety percent of the decisions on the course of employment in routine cases are interchangeable between the two fields [of workers' compensation and *respondeat superior* liability], the analogy breaks down in certain close cases because of a fundamental difference between the two types of liability. In the law of *respondeat superior*, the harmful force is always an act of the servant, or at least the omission which is the equivalent of an act. The inquiry is whether performance of the act was in furtherance of the master's business. But in many workers' compensation situations, the harmful force is not the employee's act, but something *acting upon* the employee. 1 Larson, [*Workers' Compensation Law*] § 14.00 at 4–1 [ (1998) ] (emphasis in original).

Put another way, the scope of employment may be treated differently because the policy considerations for imposing liability on employers, as a matter of social duty, differ. As a result, "there may be situations where it may be proper to hold an employer liable for compensation benefits to the employee and yet not hold the employer responsible for that employee's conduct in causing injury to a third person arising out of the same situation." *See Liberty Mutual Insurance Co. v. Electronic Systems, Inc.,* [ ] 813 F.Supp. [802,] 806 [ (S.D.Fla.1993) ].

*Id.* (concluding that, for the purposes of determining respondeat superior liability, an out-of-town employee permitted to use a company truck for purposes related to his work was not acting within the scope of his employment when he used the truck to drive to a bar, where he danced, drank beer, and ate tacos from a food truck in the bar's parking lot).

¶ 24 The *McCloud I* court also recognized that reliance on workers' compensation cases may be "misplaced" in a negligence action because "[w]orkers' compensation statutes are interpreted liberally to protect the injured worker." 217 Ariz. at 92, ¶ 32, 170

P.3d at 701 (citing *Schuck & Sons Constr. v. Indus. Comm'n,* 213 Ariz. 74, 77, ¶ 13, 138 P.3d 1201, 1204 (App.2006)); *accord Hopkins v. Indus. Comm'n,* 176 Ariz. 173, 177, 859 P.2d 796, 800 (App.1993) (recognizing that "[w]orkers' compensation statutes are to be liberally construed" (citing *Flamingo Motor Inn v. Indus. Comm'n,* 133 Ariz. 200, 201, 650 P.2d 502, 503 (App.1982))). Thus, cases addressing workers' compensation statutes may construe more broadly the scope of employment of an injured employee than is proper in the tort context. *McCloud I,* 217 Ariz. at 92, ¶ 32, 170 P.3d at 701 (citing *Throop v. F.E. Young & Co.,* 94 Ariz. 146, 153, 382 P.2d 560, 564 (1963) ("Work[ers'] [c]ompensation cases and cases arising under similar social legislation are not necessarily authority for principles giving rise to common-law liability under the doctrine of respondeat superior.")).

¶ 25 The liberal construction afforded workers' compensation legislation exists because Arizona's Workers' Compensation Act is remedial legislation enacted to protect employees injured in the course of their employment. *Hopkins,* 176 Ariz. at 177, 859 P.2d at 800 (citing *Goodyear Aircraft Corp. v. Indus. Comm'n,* 62 Ariz. 398, 402–03, 158 P.2d 511, 513 (1945)). In fact, where doubt exists as to the proper construction, courts in workers' compensation cases should adopt the construction that will best effectuate the purpose of compensating the claimant for his disability. *Id.* (citing *Bonnin v. Indus. Comm'n,* 6 Ariz.App. 317, 320, 432 P.2d 283, 286 (1967)); *see also Aitken v. Indus. Comm'n,* 183 Ariz. 387, 392, 904 P.2d 456, 461 (1995) (recognizing that "we have consistently applied workers' compensation laws liberally, remedially, and in a manner insuring that injured employees receive maximum available benefits," and "[t]he overriding theme of the system, as evidenced by our constitution, statutes, and case law, has been to preserve a claimant's opportunity to be made whole to the fullest possible extent—nothing more or less" (citations omitted)). Consequently, in workers' compensation cases, a strong policy motivation exists for courts to find that an injury arose in the "course and scope of employment," so an injured worker can be expedi-

tiously compensated, thereby "prevent[ing] the injured employee and [his or her] dependents from becoming public charges during the period of disability." *Mail Boxes, Etc., U.S.A. v. Indus. Comm'n*, 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995) (citing *Senor T's Rest. v. Indus. Comm'n*, 131 Ariz. 360, 363, 641 P.2d 848, 851 (1982)); *accord Grammatico v. Indus. Comm'n*, 208 Ariz. 10, 12, ¶ 7, 90 P.3d 211, 213 (App.2004). Unlike third-party tort claims, which require an evaluation of fault, "in the context of efficiently and expeditiously providing compensation to injured workers, which is what the [workers' compensation] system is designed to do, fault remains no consideration." *Aitken*, 183 Ariz. at 393, 904 P.2d at 462.

¶ 26 Further, in workers' compensation cases, the damages available to an injured employee are much more circumscribed than the damages available under tort law. *See, e.g., Stout v. State Comp. Fund*, 197 Ariz. 238, 243, ¶ 25, 3 P.3d 1158, 1163 (App.2000); *accord Mendoza v. McDonald's Corp.*, 222 Ariz. 139, 150, ¶ 33, 213 P.3d 288, 299 (App. 2009) ("[T]he workers' compensation system only compensates an injured worker for medical expenses and lost income caused by an illness or injury arising out of the worker's employment and suffered in the course of employment." (citing Ray Jay Davis et al., *Arizona Workers' Compensation Handbook* II–1 (1992))).

¶ 27 Given the differing policy considerations between workers' compensation and the tort system, we decline to follow the reasoning set forth in *McCloud II*. Engrafting the broad work-related test and principles from workers' compensation onto the Arizona tort system would in this case run counter to the policy considerations underlying these areas of the law and only serve to blur the distinctions between them.

■ ¶ 28 Applying the narrower scope-of-employment test applicable to the Arizona tort system, we agree with the superior court that Gulf is entitled to summary judgment on Engler's claim that Gulf is vicariously liable for Gray's alleged negligence based on the doctrine of respondeat superior. At the time of the accident, Gray was not subject to Gulf's control or right of control. Instead, once he returned to his hotel in Yuma, Gray was free to do what he wished until the next day when he arrived at work, and during that time, Gulf did not control or attempt to control his actions in any way, including directing him where or when to eat, and whether, how, or when to leave or return to his hotel room. Additionally, at the time of his allegedly negligent conduct, Gray was not acting in furtherance of his employer's business by engaging in the kind of work he was employed to perform, and his need to eat dinner, whether at the hotel or at a restaurant, was no more incidental to his employment than his need to eat dinner while not on an out-of-town assignment. Gray's conduct did not occur within the authorized time and space limits of his work (it occurred after his work day had ended), and other than reimbursement of expenses, Gulf did not pay Gray for any post-work activity. *See generally Schraft*, 111 Ariz. at 133, 524 P.2d at 954. Accordingly, Gray's conduct at the time of the accident was not so closely connected in time, place, and causation to his employment as to be a risk of harm fairly attributable to his employer's business, as compared with conduct purely personal in nature.

## CONCLUSION

¶ 29 For the aforementioned reasons, we affirm the superior court's grant of summary judgment in favor of Gulf. Because Gulf is the successful party, we grant Gulf its costs on appeal, contingent on its compliance with Rule 21 of the Arizona Rules of Civil Appellate Procedure.

CONCURRING: PHILIP HALL, Presiding Judge and JON W. THOMPSON, Judge.