NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

VALERIE KEMPER, et al., *Plaintiffs/Appellants*,

*v.*

PINNACLE DENTAL, PLLC, *Defendant/Appellee*.

No. 1 CA-CV 23-0560

FILED 08-06-2024

Appeal from the Superior Court in Maricopa County
No. CV2021-000736
The Honorable Susanna C. Pineda, Judge

**VACATED AND REMANDED**

COUNSEL

Tiffany & Bosco, P.A., Phoenix
By William M. Fischbach, III, Amy D. Sells, Elliot C. Stratton
*Counsel for Plaintiffs/Appellants*

Faith, Ledyard & Faith, PLC, Avondale
By Barry M. Aylstock
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Maria Elena Cruz joined.

---

**B A I L E Y**, Judge:

¶1 Plaintiffs, Valerie Kemper, Psy.D. LP ("Dr. Kemper") and West Valley Psychological Services, LLC ("WVPS"), appeal the superior court's summary judgment in favor of Pinnacle Dental, PLLC ("Pinnacle"), one of several defendants sued after Dr. Kemper was allegedly assaulted and defamed by Lee Harding, DDS ("Dr. Harding"). Plaintiffs also contend the court erred in awarding Pinnacle attorneys' fees, along with costs and accruing interest, as a sanction under Arizona Revised Statutes ("A.R.S.") section 12-349. For the following reasons, we vacate the judgment, including the sanctions award, and remand for further proceedings consistent with this decision.

## FACTS AND PROCEDURAL HISTORY

¶2 Plaintiffs maintain an office at a commercial plaza known as the Litchfield Park Plaza ("the Plaza"). The Plaza is governed by the Litchfield Park Plaza Office Owners Association ("the Association"), which in turn is governed by a Board of Directors ("the Board"). The Plaza is managed by Sharon Whitney of MarWest Commercial Property Management Services, LLC ("MarWest"), a property management company. At the relevant times, Dr. Kemper was a member of the Association's Board.

¶3 Defendant LJNJ Family LLC ("LJNJ") also owned a unit ("unit 150") in the Plaza, which is listed on the unit's and complex's signage as Pinnacle. Dr. Harding, a retired dentist, is LJNJ's principal. He is also the sole member of, and statutory agent for, Pinnacle, a member-managed PLLC whose Articles of Organization indicate it provides professional dentistry services.

¶4 A dispute arose when Dr. Harding began to remodel unit 150 in December 2019. The project prompted complaints from other unit owners and warnings from Whitney and MarWest that performing

2

construction without the Board's approval could result in fines or other adverse action under the Association's governing documents.

**¶5**      In January 2020, Dr. Kemper approached Dr. Harding outside of unit 150, and he invited her in. After entering, Dr. Kemper began using her phone to take photos of the unit, while stating that Whitney, the property manager, needed such photos. When Dr. Kemper refused to stop taking photos, Dr. Harding grabbed the phone, ushered her out the door, then handed her phone back.

**¶6**      Dr. Kemper called the police and reported she had been assaulted, and officers interviewed the two doctors and an on-scene witness. Dr. Harding denied assaulting Dr. Kemper and later sent two emails to Whitney and the Board, recounting his version of the incident and related events.

**¶7**      Dr. Kemper and WVPS filed a lawsuit against Dr. Harding, LJNJ, Pinnacle, and others, alleging in part that Dr. Kemper had been assaulted and the incident report and emails contained false and defamatory statements about her. With regard to Pinnacle, Plaintiffs' Amended Complaint included claims for assault and battery, defamation/libel/slander, defamation per se/libel per se/slander per se, and false light invasion of privacy.

**¶8**      After discovery had closed, Pinnacle moved for summary judgment, asserting Plaintiffs had conducted no discovery on Pinnacle itself and presented no evidence to support their claims against it. Pinnacle argued that Dr. Harding's alleged acts should not bind Pinnacle because there had been no evidence developed that (1) they were acts of a member done in the ordinary course of the company's activities and affairs under A.R.S. § 29-3301(A), (2) they were acts within Dr. Harding's agency authority, and (3) Dr. Harding was acting in furtherance of Pinnacle's business. Pinnacle argued that, although Plaintiffs' Amended Complaint alleged Dr. Harding's acts were "believed to have been in furtherance of his businesses, and in his role as a principal of . . . Pinnacle," no admissible evidence supported that allegation.

**¶9**      Following full briefing and oral argument, the superior court took the matter under advisement. The court later granted summary judgment in Pinnacle's favor and granted Pinnacle's request for attorneys' fees and costs under A.R.S. § 12-349.

**¶10**      In August 2023, the court issued a final judgment pursuant to Rule 54(b), Ariz. R. Civ. P., awarding Pinnacle its full amount of requested

fees and taxable costs. We have jurisdiction over Plaintiffs' timely appeal. *See* A.R.S. § 12-2101(A)(1).

## DISCUSSION

I.      Summary Judgment

**¶11**        Plaintiffs argue that "ample" evidence demonstrates that Dr. Harding acted within the course of Pinnacle's business and scope of his authority as Pinnacle's agent when he allegedly assaulted and defamed Dr. Kemper.

**¶12**        "[W]e review a grant of summary judgment de novo, viewing the evidence in the light most favorable to the party against whom summary judgment was entered." *Dabush v. Seacret Direct LLC*, 250 Ariz. 264, 267, ¶ 10 (2021) (citation omitted). A motion for summary judgment should be granted "if the facts produced in support of the claim . . . have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim . . . ." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309 (1990); *see also* Ariz. R. Civ. P. 56(a). To defeat a motion for summary judgment, a respondent must point to sufficient "evidence . . . such that a reasonable jury could return a verdict for the nonmoving party." *Wells Fargo Bank v. Ariz. Lab'ers, Teamsters & Cement Masons Loc. No. 395 Pension Tr. Fund*, 201 Ariz. 474, 499, ¶ 103, *as corrected* (2002) (citation omitted).

**¶13**        In granting summary judgment for Pinnacle, the superior court found that Dr. Kemper's claims against Pinnacle were based on speculation and that no evidence supported the claim that Dr. Harding acted on Pinnacle's behalf.

**¶14**        We disagree with the superior court that summary judgment was appropriate here. Pinnacle may be directly liable if Dr. Harding acted as its agent within the scope of his actual authority or vicariously liable if he acted within the scope of his employment. *See* Restatement (Third) of Agency ("Restatement") §§ 7.04, 7.07 (2006); *see also Engler v. Gulf Interstate Eng'g, Inc.*, 227 Ariz. 486, 491, ¶ 17 (App. 2011), *aff'd*, 230 Ariz. 55, 58, ¶ 13 (2012) (adopting the Restatement). Unless the undisputed facts indicate that the alleged conduct was clearly outside the scope of his employment, whether Dr. Harding was acting in service of Pinnacle when the alleged assault occurred is a question of fact for the jury. *See Engler*, 227 Ariz. at 491–92, ¶ 17 (citations omitted).

A.     Possible Direct Liability Under Restatement § 7.04

¶15            In Arizona, each member of a member-managed limited liability company "is an agent of the company for the purpose of conducting the company's activities and affairs in the ordinary course." A.R.S. § 29-3301(A)(1).   Thus, if Dr. Harding was conducting business activities and affairs for Pinnacle when the events leading to this lawsuit arose, he was an agent for Pinnacle at that time.

¶16            Pinnacle argues that Dr. Harding could not have been conducting company business because it "was not operating its dental practice and remained closed for business" when the alleged assault occurred.  It further argues that Plaintiffs "assume" the renovations to the suite were for Pinnacle's benefit when instead "LJNJ could have been renovating the office suite for a subsequent sale."  But Plaintiffs needed to make no such assumption.  In an email to the Board, Dr. Harding claimed he "wanted to quietly come out of retirement and practice again, but this incident makes that impossible."  In another email, he admitted that unit 150 "WAS a dental office and it still IS a dental office."

¶17            Moreover, at his deposition, Dr. Harding testified that on the day of the alleged assault, he was installing dental ceiling lights in unit 150. He distinguished these "equipment lights" from those that were simply part of the suite.  And he hired a professional from "Benco Dental" to install these lights.  Because this equipment is specific to dental practice—and given Dr. Harding's previous statements in his emails—a reasonable trier of fact could conclude that, on that day, Dr. Harding was acting as an agent of his dental practice.

¶18            The actions of agents can give rise to liability for their principals.  Restatement § 7.04(1) provides that "[a] principal is subject to liability to a third party harmed by an agent's conduct when the agent's conduct is within the scope of the agent's actual authority or ratified by the principal; and [] the agent's conduct is tortious."  And an agent acts with actual authority when "the agent reasonably believes . . . that the principal wishes the agent so to act."  Restatement § 7.04 cmt. b.

**¶19** Here, as the sole member of Pinnacle, Dr. Harding acted as both the agent and the principal.[1] As a result, any actions Dr. Harding took while conducting activities associated with his dental practice were inherently ratified by the principal and performed with "actual authority." Thus, under the Restatement, Pinnacle may be liable to a third party allegedly harmed by the actions of Dr. Harding, so long as Dr. Harding has acted as Pinnacle's agent.

**¶20** Still, Pinnacle claims it did not authorize Dr. Harding's actions, arguing that "[i]ntentional torts such as assault and defamation are clearly outside the authority granted to members as agents in a member-managed LLC." This argument implies that LLCs are *never* liable for intentional torts unless their members are explicitly directed to engage in tortious conduct. This is incorrect. *See Scott v. Allstate Ins. Co.*, 27 Ariz. App. 236, 239 (1976) ("The test of liability of the principal for the agent's tortious acts is not whether the tortious act itself is a transaction within the ordinary course of the business of the principal, or within the scope of the agent's authority, but whether the service itself in which the tortious act was done was within the ordinary course of such business or was in the scope of such authority." (citations omitted)); *see also* Restatement § 7.04 cmt. b (stating that, "in ordinary usage characterizing an action as 'authorized' connotes that it is done rightfully," but it may also indicate an agent is acting with "actual authority" when the agent reasonably believes the principal wishes the agent so to act).

**¶21** It is indisputable that Dr. Harding is Pinnacle's only member. The only question is whether Dr. Harding acted as an agent serving Pinnacle's business when the alleged tort occurred. Because Plaintiffs presented the evidence noted above to show he was acting as Pinnacle's agent, this is a disputed question of fact for the jury to decide.

      B.     Possible Vicarious Liability Under Restatement § 7.07

**¶22** Along with direct liability, Restatement § 7.07(1) provides that "[a]n employer is subject to vicarious liability for a tort committed by

---

[1] "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement § 1.01.

its employee acting within the scope of employment." Under Restatement § 7.07(2):

> An employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control. An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer.

¶23 The foregoing "scope of employment" rule has two halves, defining acts within and not within the scope. *See* Restatement § 7.07(2). Applying the first half of that rule in this context is mildly circular. Because Dr. Harding controls Pinnacle, under the Restatement, he would seemingly act "within the scope of [his] employment" when he acts within his control. *See id.*

¶24 But applying the second half of the test is clearer. Under that portion of the Restatement, Dr. Harding's actions would *not* fall within the scope of his employment when they are "not intended . . . to serve any purpose of [Pinnacle]." *See* Restatement § 7.07(2). Thus, whether Pinnacle is vicariously liable for Dr. Harding's alleged tortious actions depends on whether Dr. Harding intended to serve Pinnacle by his conduct. This is a question of fact. *See Farmers Ins. Co. of Ariz. v. Vagnozzi*, 138 Ariz. 443, 449–50 (1983) (recognizing that subjective intent is "a question of fact to be determined after listening to the testimony").

¶25 Because Plaintiffs argued and presented evidence raising a factual dispute whether Dr. Harding's actions were in the scope of his work for Pinnacle, summary judgment on this issue was inappropriate. Plaintiffs presented uncontroverted evidence that Dr. Harding was the sole member of Pinnacle. This demonstrates control and actual authority. Plaintiffs also provided evidence that Dr. Harding was in the office leased by Pinnacle and installing dental lights when the alleged assault occurred. Viewed in the light most favorable to Plaintiffs, *see Dabush*, 250 Ariz. at 267, ¶ 10, this evidence would allow a reasonable factfinder to conclude that Dr. Harding was acting in the ordinary course of Pinnacle's business or furtherance of Pinnacle's interests. These questions of fact must be resolved by a jury. *See Engler*, 227 Ariz. at 491–92, ¶ 17 ("Whether an employee's [alleged] tort is

within the scope of employment is generally a question of fact." (citations omitted)). Accordingly, we vacate summary judgment.[2]

¶26 Of course, this is not to say that every company with a sole member should be liable for every action of that member. Tortious actions taken by individuals may have no connection to the companies of which they are a part. But where there is doubt about whether the sole member of a company was acting in service of the company when he committed a tortious act, it is within the purview of the factfinder to determine liability.

II. The Award of Sanctions Under A.R.S. § 12-349

¶27 The superior court based its decision to grant Pinnacle's request for sanctions under A.R.S. § 12-349 on its finding that Plaintiffs were "unreasonable in not dismissing Pinnacle PLLC from this action given the basis of [Dr. Kemper's] claim was her mere assumption that Dr. Harding was acting on Pinnacle['s] behalf."

¶28 For an award of attorneys' fees made under A.R.S. § 12-349, we review the superior court's findings of fact under a clearly erroneous standard and review de novo the court's application of the statute. *Fisher ex rel. Fisher v. Nat'l Gen. Ins. Co.*, 192 Ariz. 366, 370, ¶ 13 (App. 1998) (citing *Phoenix Newspapers, Inc. v. Dep't of Corr.*, 188 Ariz. 237, 243–44 (App. 1997)). Under § 12-349(A)(1) and (3), "the court shall assess reasonable attorney fees" and expenses against a party who "[b]rings or defends a claim without substantial justification" or "[u]nreasonably expands or delays the proceeding." The term "'without substantial justification' means that the claim or defense is groundless and is not made in good faith." A.R.S. § 12-349(F).

¶29 Because summary judgment was inappropriate on this record, Pinnacle has not shown that Plaintiffs' claims against it are groundless, "thus obviating any need to determine whether the claim[s] w[ere] made in the absence of good faith." *Ariz. Republican Party v. Richer*, ___ Ariz. ___, ___, ¶ 1, 547 P.3d 356, 359 (2024). Accordingly, the superior court erred in awarding Pinnacle its attorneys' fees and costs under A.R.S. § 12-349, and we vacate the court's sanctions award.

---

[2] Given our resolution of this issue, we need not address the parties' arguments regarding the applicability of the "sole representative doctrine."

III.     Costs and Attorneys' Fees on Appeal

**¶30**     Pinnacle requests an award of attorneys' fees on appeal under A.R.S. § 12-349.  We deny Pinnacle's request.  As the prevailing party on appeal, Plaintiffs are entitled to recover their taxable costs upon compliance with Rule 21, ARCAP.

## CONCLUSION

**¶31**     We vacate the judgment, including the sanctions award, and remand for further proceedings consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED:    AGFV